IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GRACE EVELYN A. BORDERS,

        Plaintiff,

   v.

CAROLYN W. COLVIN,
Commissioner of Social
Security,

        Defendant.

Case No. 2:13-cv-01985-AA
OPINION AND ORDER

---

Nancy J. Meserow
Attorney at Law
7540 S.W. 51st Avenue
Portland, Oregon 97219
    Attorney for plaintiff

S. Amanda Marshall
United States Attorney
Ronald K. Silver
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97201

Richard A. Morris
Social Security Administration
Office of the General Counsel
701 5th Ave, Suite 2900 M/S 221A
Seattle, Washington 98104
    Attorneys for defendant

Page 1 - OPINION AND ORDER

AIKEN, Chief Judge:

Plaintiff Grace Evelyn Borders brings this action pursuant to the Social Security Act ("Act") to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's application for Title XVI supplemental security income ("SSI") under the Act. For the reasons set forth below, this Court reverses the Commissioner's decision and remands the case for payment of benefits.

## PROCEDURAL BACKGROUND

On August 7, 2009, plaintiff applied for SSI. Tr. 17, 878, 883. The Social Security Administration denied her application initially and upon reconsideration. Tr. 17. On March 15, 2012, an administrative law judge ("the ALJ") conducted a hearing, at which plaintiff testified over the phone and without legal representation. Tr. 40-41, 175, 367. A vocational expert also testified at the hearing. Tr. 17. Thereafter, plaintiff obtained representation and sought a supplemental hearing to further develop the record. Tr. 17, 367, 176-78. On June 22, 2012, the ALJ issued a decision denying plaintiff's request for a supplemental hearing and finding the plaintiff not disabled within the meaning of the Act. Tr. 17-26. After the Appeals Council denied her request for review, plaintiff sought judicial review from this Court, requesting the Court reverse the ALJ's decision and remand the case for the payment of benefits. Pl.'s Opening Br. 34-35. In its response, defendant conceded the ALJ erred and moved that the

Page 2 - OPINION AND ORDER

Court reverse and remand for further proceedings. Def.'s Br. Mot. Remand 14.

## STATEMENT OF FACTS

Born on Dec. 18, 1981, plaintiff was 27 years old when she applied for benefits and 30 at the time of the hearing. Tr. 38. Plaintiff alleges disability since birth. Tr. 182. When she was 7 years old, doctors diagnosed plaintiff with neurofibromatosis, a genetic disorder characterized by the formation of multiple nerve tumors sometimes on the brain and spinal cord. Tr. 397. Specifically, plaintiff suffers from neurofibromatosis type 1, a progressive disorder that worsens with age and can cause learning disabilities, cosmetic disfigurement, headaches, and cardiovascular complications.[1] Tr. 498, 820-21, 398.

From a very young age, educators and psychologists identified plaintiff as suffering from borderline intellectual ability and learning disabilities likely related to her neurofibromatosis. Tr. 397-99. From the age of 6, plaintiff attended special education classes, eventually graduating high school with a modified diploma indicating she failed to meet minimum graduation standards.[2] Tr.

---

[1] See NINDS Neurofibromatosis Fact Sheet, National Institutes of Health, http://www.ninds.nih.gov/disorders/neurofibromatosis/detail_neurofibromatosis.htm (last visited November 14, 2014).

[2] Both in her opinion and in the hearing, the ALJ misstated plaintiff's vocational qualifications as including a "high school education." Tr. 24, 63. However, a high school education requires "abilities in reasoning, arithmetic, and language skills acquired through formal schooling at a 12th grade level or above." 20 C.F.R. § 416.964(b)(4). Here, the record shows plaintiff did not meet those standards. Tr. 370.

Page 3 - OPINION AND ORDER

370, 397. In 2008, when plaintiff was 26 years old, she received a full scale IQ score of 70, and, in 2010, she received a full-scale score of 75. Tr. 660, 843.

After high school, plaintiff worked temporary and cashier jobs but struggled to maintain employment for more than a few months. Tr. 240, 301.[3] Plaintiff reports no employment since 2005. Tr. 301-09. Over the years, plaintiff lived with family and friends, "under bridges," and in homeless shelters. Tr. 655, 658, 841, 883.

In 2009, doctors discovered plaintiff had a brain lesion and multiple brain tumors including one on her optical nerve and referred plaintiff to a neurosurgeon to assess whether they were malignant. Tr. 820-21, 875. The doctors attributed the growths to her neurofibromatosis. Id. Also, on several occasions, doctors observed neurofibroma tumors on plaintiff's face and body. Tr. 498, 564, 889.

In addition to neurofibromatosis and borderline intellectual functioning, the ALJ acknowledged that plaintiff suffers from asthma, obesity, and adjustment disorder with anxiety and depression. Tr. 19. Dr. James Ewell, a psychologist with the state Department of Human Services, also diagnosed plaintiff with post-traumatic stress disorder and an unspecified cognitive disorder. Tr. 655-56. Plaintiff alleges she cannot work due to symptoms that include migraine headaches, visual impairment, dizzy

---

[3] In her longest stretch of employment, plaintiff reports that she worked for more than one year assisting at a daycare center, but the record shows the job was supported as part of her high school vocational training program. Tr. 240, 301, 384, 389-91.

Page 4 - OPINION AND ORDER

spells, dyslexia, problems concentrating, anxiety, panic attacks, and difficulty communicating with coworkers. Tr. 48, 202-03, 325, 354.

## STANDARD OF REVIEW

In general, the Court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). The Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. First, the Commissioner evaluates whether a claimant is engaged in

Page 5 - OPINION AND ORDER

"substantial gainful activity." Yuckert, 482 U.S. at 140; 20 C.F.R. § 416.920(b). If so, the claimant is not disabled.

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 416.920©. If the claimant does not have a severe impairment, he is not disabled.

At step three, the Commissioner resolves whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 416.920(d). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national and local economy. Yuckert, 482 U.S. at 141-42; 20 C.F.R. § 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 416.966.

## THE ALJ'S FINDINGS

At step one of the five-step evaluation process outlined above, the ALJ found that plaintiff had not engaged in substantial

Page 6 - OPINION AND ORDER

gainful activity since the application date. Tr. 19. At step two, the ALJ determined that plaintiff had the following severe impairments: neurofibromatosis, asthma, obesity, borderline intellectual functioning, adjustment disorder with anxiety, and depression. Tr. 19. At step three, the ALJ determined that plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 19-21.

Finding that plaintiff did not establish presumptive disability at step three, the ALJ continued the sequential evaluation process to determine how plaintiff's impairments affected her ability to work. Tr. 21-22. The ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform "a range of light work as defined in 20 C.F.R. 416.967(b)." Id. Specifically, in an eight-hour work day, plaintiff was limited to sitting, standing, and walking for no more than six hours. Id. The ALJ also found that plaintiff could perform simple and detailed tasks, but nothing complex. Id. Moreover, she could only have superficial and incidental contact with the public, and she could not be required to perform under fast-paced or strict production quotas. Tr. 22. At step four, the ALJ concluded that plaintiff was not capable of performing any of her past relevant work as a fast food and daycare worker. Tr. 24.

At step five, the ALJ determined that jobs existed in significant numbers in the national and local economy that plaintiff could perform despite her impairments, such as office helper, motel cleaner, and document clerk. Tr. 25. As such, the

Page 7 - OPINION AND ORDER

ALJ concluded that plaintiff was not disabled under the Act.  Id.

## DISCUSSION

The Commissioner concedes that the ALJ erred and the Court should reverse the ALJ's decision.  As such, the only contested issue before this Court is whether to find the plaintiff disabled and remand for payment of benefits or to find the evidence inconclusive and remand for further proceedings.

The Court should remand for further administrative proceedings if further development of the record would be useful. See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000). Conversely, when the evidence shows the plaintiff is disabled and no useful purpose would be served by enhancement of the record, the Court should remand for the immediate payment of benefits. Strauss v. Comm'r of Soc. Sec. Admin., 635 F.3d 1135, 1138 (9th Cir. 2011).  In making its determination, the Court should credit rejected evidence and remand for benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) it is clear that if such evidence were credited, the ALJ would be required to find the claimant disabled; and (3) there are no outstanding issues that must be resolved before a determination of disability can be made. Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).

Here, the Commissioner concedes that the ALJ erred by failing to assess whether the plaintiff was presumptively disabled under Listing 12.05C, by not addressing Dr. James Ewell's medical opinion and a lay witness statement which described plaintiff's disabilities, and by failing to account for all of the limitations

identified by state reviewing psychologist Joshua J. Boyd, Psy.D. Def.'s Br. Mot. Remand 12. Despite these admitted errors, the Commissioner contends further evidence and/or proceedings are needed to determine whether plaintiff meets Listing 12.05C. Id. at 8. The Court disagrees.

### A. Listing 12.05C

The Social Security Regulations "Listing of Impairments" enumerates and establishes criteria for impairments so severe they preclude a person from performing gainful activity. Young v. Sullivan, 911 F.2d 180,183-84 (9th Cir. 1990); 20 C.F.R. § 404.1520(d). At step three of the five-step disability analysis, the ALJ considers whether the claimant meets any of the listings. If the claimant meets all of the requirements for any one of the listings, the ALJ is required to find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d); see Bowen v. City of New York, 476 U.S. 467, 471 (1986)("If a claimant's condition meets or equals the listed impairments, he is conclusively presumed to be disabled and entitled to benefits").

Here, the ALJ considered several listings but inexplicably failed to mention Listing 12.05C, which pertains to "intellectual disability." In order to meet Listing 12.05C, a claimant must show: (1) subaverage intellectual functioning with deficits in adaptive functioning initially manifested before age 22;(2) a valid IQ score of 60 to 70; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation. Kennedy v. Colvin, 738 F.3d 1172, 1176 (9th Cir. 2013); see 20

Page 9 - OPINION AND ORDER

C.F.R. pt. 404, subpt. P, app. 1, §§ 12.05, 12.05C.

Plaintiff argues she qualifies as disabled under Listing 12.05C and thus the Court should remand for benefits. The Commissioner responds that the Court cannot make the 12.05C determination on the evidence presented and thus should remand for further development of the record. The Commissioner concedes, however, that plaintiff satisfies the third prong of 12.05C in that she "has a physical or other mental impairment imposing an additional and significant work-related limitation or function." Def.'s Br. Mot. Remand 12. As such, the Court need only consider the remaining two criteria for 12.05C.

### 1. Onset Before Age 22

Listing 12.05C requires the claimant to demonstrate "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested" before age 22. 20 C.F.R. Pt. 404, Subpt. P, app. 1 § 12.05. The Diagnostic and Statistical Manual of Mental Disorders describes deficits in adaptive functioning as "how well a person meets community standards of personal independence and social responsibility, in comparison to others of similar age and socioeconomic background." American Psychiatric Association, <u>Diagnostic and Statistical Manual of Mental Disorders</u> 37 (5th ed. 2013). The claimant need not show a diagnosis of mental retardation or an IQ score in that range before age 22 in order to meet the onset requirement. <u>Pedro v. Astrue</u>, 849 F. Supp. 2d 1006, 1010-11 (D. Or. 2011); <u>Gomez v. Astrue</u>, 695 F. Supp. 2d 1049, 1061 (C.D. Cal. 2010). Rather,

Page 10 - OPINION AND ORDER

courts consider circumstantial evidence such as "attendance in special education classes, dropping out of high school prior to graduation, difficulties in reading, writing or math, and low skilled work history." Pedro, 849 F. Supp. 2d at 1011-12; Knarr v. Astrue, 2012 WL 1194319, at *5 (D. Or. Apr. 9, 2012).

The Court finds ample evidence that plaintiff suffered deficits before the age of 22. School records show plaintiff began attending special education classes when she was 6 years old and continued until graduation from high school. Tr. 370, 397. At age 7, plaintiff was diagnosed with neurofibromatosis, a degenerative genetic disorder that can cause intellectual impairment and other symptoms which worsen over time. Tr. 397, 662. Throughout her childhood years, plaintiff received IQ scores in the 70s and low 80s and was diagnosed with borderline intellectual functioning. Tr. 397, 399, 401. When plaintiff was a 13-year-old seventh grader, her school psychologist noted that she was achieving "well below the mean in all academic skill areas" at roughly the level of a second-grader. Tr. 401. He said he suspected her neurofibromatosis could be causing her to learn at an even slower rate than predicted by her ability test results. Id. In high school, despite a modified curriculum, plaintiff continued to struggle academically, receiving several D's and F's in math, computers and other courses. Tr. 370. Upon graduation, plaintiff received a modified diploma because she did not meet minimum graduation standards as measured by the math and reading portions of the Portland Graduation Standards Test. Id. Before age 22,

Page 11 - OPINION AND ORDER

plaintiff worked several unskilled jobs and struggled to hold onto them for more than a few months. Tr. 301-09.

There is no need for further administrative proceedings in order to conclude that plaintiff meets the early onset requirement for disability under 12.05C. The ALJ's opinion did not consider 12.05C and thus did not address any of the evidence of early onset. Regardless, the ALJ would not have had legally sufficient reasons to reject the evidence, given that it comes from plaintiff's school records, which consistently and reliably document plaintiff's low aptitude and poor academic achievement. Tr. 370-401. When credited as true, the evidence shows plaintiff demonstrated "significantly subaverage general intellectual functioning" before the age of 22.

### 2. IQ Score between 60 and 70

Listing 12.05C also requires a "valid verbal, performance, or full scale IQ of 60 through 70." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05C. Regulations require that in the cases in which the type of IQ test administered yields multiple scores "e.g., where verbal, performance, and full scale IQs are provided" in a single test such as in a Wechsler series test, courts must use the lowest of the scores when assessing whether a claimant meets 12.05C. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(D)(6)(c). Moreover, courts in the Ninth Circuit have interpreted the regulations to prefer the lowest score not just from a single test but also from among multiple IQ tests. Ray v. Chater, 934 F. Supp. 347, 350 (N.D. Cal. 1996); Low v. Colvin, 2014 WL 4968285, at *5 (E.D. Cal.

Page 12 - OPINION AND ORDER

Sept. 30, 2014). As such, when evaluating whether a claimant with multiple IQ tests qualifies as intellectually disabled, courts use the lowest valid verbal, performance, or full scale IQ score from among all of the tests. See, e.g., Hutnick v. Colvin, 2014 WL 880360, at *5 (E.D. Cal. March 5, 2014); Anthony v. Colvin, 2014 WL 3792780, at *3 (C.D. Cal. July 31, 2014). Courts have adhered to this rule even when the claimant's most recent IQ score is the higher score and does not qualify under 12.05C. See Fanning v. Bowen, 827 F.2d 631, 633 (9th Cir. 1987) (IQ requirement for 12.05C satisfied where claimant had qualifying score in 1982 and nonqualifying score in 1983); Lewis v. Astrue, 2008 WL 191415, at *6 (N.D. Cal. Jan. 22, 2008) (only claimant's lowest score is relevant to Listing 12.05C regardless of whether the record contains a subsequent higher score).

Although school officials tested plaintiff's IQ three times before she reached 14 years old, the regulations provide that a claimant's IQ scores from between the ages of 7 and 16 are only valid for two years. Tr. 397-99; 20 C.F.R. pt. 404, subpt. P, app. 1, § 112D(10). Given that plaintiff is now more than 30 years old, these childhood tests, with low scores ranging from 72-74, are no longer valid.[4] The record contains only two sets of valid IQ scores, one from 2008 and the other from 2010. Tr. 660, 843. In the 2008 test, plaintiff received the following IQ scores: Verbal-

---

[4] The Commissioner cites a 1988 IQ test in its brief, however, that test was administered when plaintiff was 6 years old and ceased being valid more than 24 years ago. Def.'s Br. Mot. Remand 11.

Page 13 - OPINION AND ORDER

71; Performance- 74; and Full Scale IQ- 70. Tr. 660. In 2010, plaintiff's scores were as follows: Verbal- 80; and Full Scale IQ- 75. Tr. 843. The lowest of these valid scores is 70, and thus, plaintiff meets the IQ requirement for Listing 12.05C.

The ALJ failed to even mention plaintiff's 2008 IQ test results. Moreover, the Court finds the 2008 scores to be reliable and valid. Dr. Ewell administered the IQ test as part of a comprehensive psychological evaluation in order to assist the Department of Human Services, Child Welfare Program ("DHS") in determining proper custody of plaintiff's two children. Tr. 653, 663. The record indicates plaintiff, at times, hid and downplayed her disabilities, "faking good" possibly with the hope of retaining custody of her children. Tr. 212, 661, 689. As such, in her DHS evaluation with Dr. Ewell, plaintiff had the incentive and inclination to perform her best on the 2008 IQ test. Indeed, Dr. Ewell credited her low IQ score, finding she was at the "cut-off between Mild Mental Retardation and Borderline Intellectual Functioning." Tr. 655. He added:

> The prognosis for Ms. Borders is seen as poor. Her cognitive deficits will most likely not change. As a result, her judgment and decision-making will most likely remain impaired. She has had difficulty living independently, or functioning as an independent parent in the past. I would have severe reservations regarding the likelihood of her doing so in the future.
> Tr. 662.

The Court finds plaintiff's 2008 scores valid. Since the court is required to use the lowest valid IQ score in conjunction with Listing 12.05C, further IQ testing or other proceedings would not alter the Court's conclusion. Plaintiff meets all the requirements

Page 14 - OPINION AND ORDER

for Listing 12.05C.

## CONCLUSION

Based on the evidence in the record, the ALJ should have found plaintiff presumptively disabled under Listing 12.05C. Further administrative proceedings would only delay plaintiff's receipt of benefits and would not alter the outcome of this case. As such, the Commissioner's decision is REVERSED and this case is REMANDED FOR PAYMENT OF BENEFITS.

IT IS SO ORDERED.

Dated this 3RD day of December 2014.

_____
Ann Aiken
United States District Judge

Page 15 - OPINION AND ORDER